So Ordered.

Dated: July 3, 2025



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Nathan Huiras,                      Case No. 23-24283-gmh

                                           Chapter 13

    Debtor.

**OPINION AND ORDER ON NICOLE HUIRAS'S MOTION TO DISMISS CASE**

        Nathan Huiras's wife, Nicole, filed for divorce in the Wisconsin Circuit Court for Racine County in July 2021. In April 2023, after a multiday trial, the circuit court entered findings of fact, conclusions of law, and a final judgment that, in relevant part, obligates Nathan to pay Nicole for the support of their minor children. ECF No. 196-3, at 28–31.

        In September 2023 Nathan filed in this court a voluntary petition for relief under chapter 13 of the Bankruptcy Code, commencing this case. A great deal of litigation has followed, mainly between Nathan and Nicole, including multiple hours-long evidentiary hearings. The court held the last such hearing on December 13, 2024, focusing on confirmation of Nathan's proposed debt-adjustment plan. At the conclusion of that hearing, the court found, "[b]ased on the debtor's testimony and the other evidence presented", that Nathan "has not satisfied the confirmation requirement set

forth in 11 U.S.C. §1325(a)(8)" because he is not current on post-petition child-support payments required by the final divorce judgment, which is a "domestic support obligation" as that term is defined in 11 U.S.C. §101(14A). ECF No. 201, at 2. The court also addressed other arguments that Nathan raised at that hearing, including about "the validity of th[e] . . . obligation, its categorization as a 'domestic support obligation' by this court, and the authority of the state court that imposed the obligation". *Id.*

On December 23, 2024, based on this court's finding at the December 13, 2024 evidentiary hearing that Nathan is not current on post-petition child-support payments, Nicole filed a motion to dismiss this case under 11 U.S.C. §1307(c)(11), which defines "cause" for dismissal of a chapter 13 case to include "failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition." (Nicole also asks that Nathan be barred from filing another bankruptcy case for 180 days.) Nathan timely objected, and has since filed numerous other documents, raising a host of primarily constitutional challenges to the final divorce judgment's requirement that he pay child support; sections of the Wisconsin Statutes concerning child custody, placement, and support; and provisions of chapter 13 imposing adverse consequences on him for not making post-petition child-support payments. Nathan disputes that the case should be dismissed and maintains that the court can and should confirm his plan, without regard to whether he is current on post-petition child-support payments.[1] In February 2025 the court held a hearing, mainly to hear the parties' arguments for and against Nicole's motion to dismiss the case.

---

1. On March 4, 2025, Nathan filed a motion to "STAY the DSO issue" and "CONFIRM [his] plan". ECF Nos. 226, at 4. This motion is denied because a bankruptcy court *cannot* confirm a chapter 13 plan unless the debtor shows that he "has paid all amounts that are required to be paid under a domestic support obligation and that first become payable after the date of the filing of the petition if [he] is required by a judicial or administrative order, or by statute, to pay such domestic support obligation". §1325(a)(8); *U.S. Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277 n.14 (2010) ("Section 1325(a) . . . *requires* bankruptcy courts to address and correct a defect in a debtor's proposed plan even if no creditor raises the issue."). More to the point, the matter presently before this court is not confirmation of the plan but whether this case should be dismissed for "cause" as defined in relevant part by §1307(c)(11).

I

Many of Nathan's defenses to dismissal of this case are express or implied challenges to the constitutional validity and enforceability of the child-support order in the final divorce judgment. These defenses are based on everything from broad appeals to "inalienable right[s]" of his that were purportedly violated during the divorce proceedings to allegations that Nicole obtained unjustly favorable terms in the final divorce judgment through fraud on the circuit court and perjury during those proceedings to assertions that "the government" violated his "liberty to contract freely" and "Fifth Amendment Takings Clause rights" by ordering him to pay child support. ECF No. 205, at 1, 3 & 5; see also ECF Nos. 208 & 209.[2]

Many of Nathan's remaining arguments against dismissal dispute the constitutionality of two provisions of the Wisconsin Statutes on child custody and placement and child support. Nathan challenges section 767.41(2)(d)(1), which generally provides for "a rebuttable presumption that it is detrimental to [a] child and contrary to the best interest of the child to award joint or sole legal custody to" a party "if the court finds by a preponderance of the evidence that [the] party has engaged in a pattern or serious incident of interspousal battery . . . or domestic abuse". Nathan views this statute as an unconstitutional bill of attainder because the circuit court utilized it to

---

2. The court primarily looks to Nathan's December 23, 2024 filing, ECF No. 205, for his arguments against Nicole's motion to dismiss the case, ECF No. 204—even though that motion was filed the same day; Nathan's December 23, 2024 filing was mailed to the court for filing (presumably before Nicole's motion was filed electronically by her counsel); and Nathan's December 23, 2024 filing is not directly responsive to Nicole's motion—because it is his most comprehensive and legible relevant filing explicating his arguments, following the December 13, 2024 evidentiary hearing at which the court made the factual finding at the heart of Nicole's motion, for why this court should find that he has, in fact, satisfied the plan-confirmation requirement set forth in §1325(a)(8), not because he is current on post-petition child-support payments, but because he was not validly or legally required to make any such payments. In short, the court effectively treats Nathan's and Nicole's December 23, 2024 filings as simultaneous filings on the same contested matter: whether the court should revisit its December 13, 2024 finding that Nathan is <u>not</u> current on post-petition payments required under a domestic support obligation and proceed to consider confirmation of his plan or should instead dismiss this case for cause.

punish him for an alleged crime without proof of his guilt beyond a reasonable doubt and deny him custody of his and Nicole's minor children, which led to its order requiring him to pay child support. Nathan also challenges section 767.511(1)(a), which requires a Wisconsin court "enter[ing] a judgment of . . . divorce" to "[o]rder either or both parents to pay an amount reasonable or necessary to fulfill a duty to support a child." Nathan asserts that this statute violates his constitutional right to contract because the circuit court relied on this purported authority to impose on him, without his consent, an obligation (to pay child support) that can only arise by contract.[3]

These arguments miss the mark. The issue currently before this court is whether Nathan has failed "to pay any domestic support obligation that first becomes payable after the date of the filing of the petition." §1307(c)(11).[4] This court has already found that he has: as noted above, at the December 13, 2024 evidentiary hearing, this court

---

3. On February 7, 2025, pursuant to 28 U.S.C. §2403, Federal Rule of Civil Procedure 5.1(b), and Federal Rule of Bankruptcy Procedure 9005.1, this court certified Nathan's constitutional challenges to these Wisconsin Statutes sections to the Attorney General of the State of Wisconsin and gave the State until March 21, 2025, to intervene. ECF No. 218. The State did not intervene. Nathan's most recent substantive filing states that this "willful refusal to respond" means that the State "has defaulted on the constitutional challenge", thereby "admitt[ing]" that these Wisconsin Statutes sections "are unconstitutional" and absolving him of "ANY DOMESTIC SUPPORT OBLIGATIONS". ECF No. 239, at 2. On those grounds, Nathan seeks partial summary judgment with respect to the constitutionality of these statutory provisions. *Id.* This request is denied because §2403 and the applicable procedural rules afford the State an *opportunity* to intervene in a proceeding in which the constitutionality of one or more of its statutes is contested, but they do not *require* intervention, so a court cannot sanction a State—by entering a default or a judgment against the State or otherwise—for opting not to join the fray. And, with or without the State's intervention, it is for the courts "to say what the law is", including whether a given statute is constitutional. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).

4. For the sake of completeness, the court notes that some of Nathan's arguments concern post-judgment injuries he claims to have suffered because of the child-support order in the final divorce judgment, particularly harms that purportedly resulted from efforts by the circuit court, Racine County Child Support Services, and others to enforce the child-support order or compel him to comply with that order, including by using federal funding for such enforcement, pursuant to Title IV-D of the Social Security Act, 42 U.S.C. §§651–669b. See, e.g., ECF No. 205, at 3. These arguments are even further afield from the matter at hand than are Nathan's arguments about the validity and enforceability of the judgment itself: nothing that may have happened to Nathan as a result of the child-support order or his failure to comply with it affects the underlying validity and enforceability of the final divorce judgment and any injury he may have suffered because that judgment was entered has no discernably relevant bearing on whether this case should be dismissed.

found that Nathan has failed to make post-petition child-support payments required by the circuit court's final divorce judgment and that the child-support order in that judgment imposed a domestic support obligation. Nothing in Nathan's opposition to Nicole's motion to dismiss this case or any of his other filings upsets those findings.[5]

Putting aside how the above-described arguments might fare on the merits, the main difficulty for Nathan, with respect to these arguments, is that federal law requires this court to give the judgments "of any court of any . . . State . . . . the same full faith and credit . . . as they have by law or usage in the courts of such State". 28 U.S.C. §1738. In Wisconsin, a judgment is presumptively valid and typically not subject to collateral attack—i.e., a judgment ordinarily cannot be challenged other than in the action in which it is entered or on direct appeal from the judgment itself. See *Mercado v. GE Money Bank*, 768 N.W.2d 53, 57–58 (Wis. Ct. App. 2009) (quoting *Oneida Cnty. Dep't of Soc. Servs. v. Nicole W. (In re Termination of Parental Rts. to Brianca M.W.)*, 728 N.W.2d 652, 661–62 (Wis. 2007)). Nathan should have presented all challenges to the legality of the circuit court ordering him to pay child support during the divorce proceedings in that court and then on appeal from the final divorce judgment and the child-support order to the Wisconsin Court of Appeals (and, if necessary, to the Wisconsin Supreme Court and the United States Supreme Court). He made at least some arguments of this kind in the divorce action, though the circuit court rejected them. See ECF No. 196-3, at 69–70 (noting Nathan's argument that "that there is no consitutitutional [sic] right to child support, citing to *Blessing v. Freestone*, 520 U.S. 329 (1997)", and ruling that "[t]his case does not apply"; "find[ing] no evidence or support for [Nathan]'s conspiracy

---

5. On March 21, 2025, Nicole filed an affidavit in an apparent attempt to update the court as to the status of Nathan's post-petition default in child-support payments. ECF No. 234. Less than two hours later, Nathan filed a "Demand For Cross Examination" of Nicole about her statements in that affidavit. ECF No. 235. That request is denied because, as already noted, this order is based on Nathan's own testimony, the exhibits admitted, and the court's relevant findings of fact at the December 13, 2024 evidentiary hearing, not Nicole's March 20, 2025 affidavit, meaning that, at the least, Nathan has no present reason to examine (or cross-examine) Nicole about it.

theories related to child support"; and "reject[ing] all arguments as to the unconstitutionality of child support"). But Nathan did not timely appeal the final divorce judgment. See *Huiras v. Huiras (In re Marriage of Huiras)*, 2024 WL 835171, at *2 (Wis. Ct. App. Feb. 28, 2024) (explaining that the court was "without jurisdiction", on Nathan's appeal from a post-judgment order of the circuit court, to consider Nathan's "challeng[es to] the . . . final divorce judgment" because "[n]either Nathan nor Nicole appealed from that final judgment"). And by failing to appeal he forfeited the principal means Wisconsin law allows to contest the judgment and have it vacated.

Wisconsin courts recognize only limited circumstances in which a judgment can subsequently be adjudged void, meaning it "is a mere nullity" that "is not binding on anyone." *Kett v. Cmty. Credit Plan, Inc.*, 586 N.W.2d 68, 73 (Wis. Ct. App. 1998) (first citing *Hottelet v. Von Cotzhausen*, 154 N.W. 701, 703 (Wis. 1915); and then citing *Neylan v. Vorwald*, 368 N.W.2d 648, 656 (Wis. 1985)). "But Wisconsin recognizes a judgment as void if and only if the entering court lacked jurisdiction or acted on inadequate notice." *Jacobson v. Wells Fargo Bank, N.A. (In re Jacobson)*, 614 B.R. 321, 328 (Bankr. E.D. Wis. 2020) (citing *State v. Campbell*, 718 N.W.2d 649, 659–60 (Wis. 2006)); see also *Neylan*, 368 N.W.2d at 654 (holding that a trial court's sua sponte dismissal orders were void due to a lack of "actual notice before entry", which "precluded the opportunity to be heard"). Wisconsin's circuit courts rarely (if ever) lack jurisdiction (meaning subject-matter jurisdiction) over matters governed by state law, of which actions affecting the family, such as divorce, are among the most quintessential. See *Vill. of Trempealeau v. Mikrut*, 681 N.W.2d 190, 194 (Wis. 2004) (quoting *Mueller v. Brunn*, 313 N.W.2d 790, 792 (Wis. 1982); and then citing *Kline v. Burke Const. Co.*, 260 U.S. 226, 234 (1922)) ("[I]n Wisconsin, 'no circuit court is without subject matter jurisdiction to entertain actions of any nature whatsoever.'"); *Eberhardy v. Cir. Ct. (In re Guardianship of Eberhardy)*, 307 N.W.2d 881, 886 (Wis. 1981) (citing *John F. Jelke Co. v. Hill*, 242 N.W. 576, 580 (Wis. 1932)) ("[I]n Wisconsin the jurisdiction and the power of the circuit court is conferred not by act of the

legislature, but by the [Wisconsin] Constitution itself."); cf. *Ankenbrandt v. Richards*, 504 U.S. 689, 703–04 (1992) (concluding that federal courts lack the "power to issue divorce, alimony, and child custody decrees", in part because "state courts are more eminently suited . . . to handling issues that arise out of conflicts over [such] decrees"). Nathan fails to identify, and this court cannot discern (or, indeed, even imagine), any basis for concluding that the circuit court lacked jurisdiction over his and Nicole's divorce action, and the record is clear that Nathan not only had notice of the proceedings but zealously participated in them for nearly two years before the entry of the final divorce judgment.[6] Accordingly, the final divorce judgment is not void.

Some of Nathan's allegations here, if proven, could (in theory, at least) justify a Wisconsin court granting him relief from the final divorce judgment, which is to say, that judgment might be *voidable*, at least in relevant part. For example, "Wisconsin courts may exercise their equitable powers to relieve an aggrieved party from a judgment procured by fraud . . . if the party 'acts seasonably and was without excusable negligence in the action,' and where refusing to afford relief would subject the party to an unconscionable judgment." *Campbell*, 718 N.W.2d at 662 (quoting *Weber v. Weber*, 51 N.W.2d 18, 23 (Wis. 1952); then citing *State Cent. Credit Union v. Bayley*, 147 N.W.2d 265, 269 (Wis. 1967); and then citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244–45 (1944)).

But "a voidable judgment has the same force and effect as a valid judgment until it has been set aside." *Id.* at 659 (first citing *Kett*, 586 N.W.2d at 73; and then citing *Stimson v. Munsen (In re Gunderson's Est.)*, 27 N.W.2d 896, 898 (Wis. 1947)); see also *Pugh*

---

 6     The final divorce judgment includes a lengthy discussion of whether Nathan's (or Nicole's) "approach to [the] litigation" was "unreasonable" because it "cause[d] the other party to incur extra and unnecessary fees." ECF No. 196-3, at 31–40 (citing *Ondrasek v. Ondrasek (In re Marriage of Ondrasek)*, 377 N.W.2d 190 (Wis. Ct. App. 1985)) (discussing "overtrial"). Whether the circuit court's findings on that issue are accurate, that court seemingly felt the need to address the matter in great detail, which reinforces what the evidence presented by Nathan and Nicole in this case shows: neither lacked notice of or a meaningful opportunity to participate in the divorce proceedings, and both did so.

*v. Fowlie (In re Penney's Est.)*, 274 N.W. 247, 254 (Wis. 1937) (explaining that an "order or judgment, however erroneous, must stand until reversed, modified, or set aside . . . . It is not subject to collateral attack merely because it is erroneous, nor is it void for that reason."). And even if a Wisconsin court, whether on appeal or in a collateral action, could entertain a request from Nathan to set aside the final divorce judgment in whole or in part—e.g., because it was procured by fraud—were Nathan to request such relief here, in order to show that he has satisfied all validly imposed domestic support obligations, this court would lack jurisdiction to hear that request. *Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th 754, 766 (7th Cir. 2024) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)) (explaining that, except where a federal statute provides otherwise, federal district courts lack jurisdiction of "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"); see also 28 U.S.C. §151 ("In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district.").

Simply put, the final divorce judgment, including the child-support order, is not void; whether it is voidable, this court must give it full faith and credit unless it is set aside; and this court lacks the jurisdiction to set it aside. Consequently, to the extent that Nathan's arguments against dismissal of this case are based on the asserted invalidity or unenforceability of the child-support order itself (or any other portion of the final divorce judgment), this court cannot entertain them.

II

The rest of Nathan's arguments against dismissal of this case, and the only such arguments that this court can address on the merits, concern the constitutional validity of the Bankruptcy Code provisions that authorize dismissal of a chapter 13 case based on the debtor's failure to pay post-petition domestic-support obligations (such as court-

ordered child-support payments) and condition confirmation of a chapter 13 plan on the debtor being current on all such obligations. Nathan does not expressly challenge the constitutionality of §1307(c)(11), the dismissal provision on which Nicole's motion is based, but he does challenge the constitutionality of §1325(a)(8), the related Code provision that similarly provides that a chapter 13 plan cannot be confirmed unless "the debtor has paid all amounts that are required to be paid under a domestic support obligation and that first become payable after the date of the filing of the petition if the debtor is required by a judicial . . . order . . . to pay such domestic support obligation".

Congress has broad authority, under the Constitution, "to establish 'uniform Laws on the subject of Bankruptcies throughout the United States.'" *Siegel v. Fitzgerald*, 596 U.S. 464, 467 (2022) (quoting U.S. Const., art. I, §8, cl. 4). What is more, the United States Supreme Court has held that "[t]here is no constitutional right to obtain a discharge of one's debts in bankruptcy." *United States v. Kras*, 409 U.S. 434, 446–47 (1973) (describing a bankruptcy discharge as "obviously . . . a legislatively created benefit, not a constitutional one," that "was a benefit withheld, save for three short periods, during the first 110 years of the Nation's life"). It follows that there is no constitutional right to continuation of a chapter 13 case or confirmation of a chapter 13 plan, both of which are necessary to an eventual discharge under 11 U.S.C. §1328.

This congressional power is not limitless, of course. For example, Congress cannot limit the availability of a bankruptcy discharge based on "the suspect criteria of race". *Id.* at 446. Nor can "Congress . . . exercise its power" in violation of "the Due Process Clause" by depriving individuals of property rights through "arbitrary governmental action". *Flemming v. Nestor*, 363 U.S. 603, 611 (1960). But these limitations hem in congressional authority only at the outermost margins. "Congressional power over bankruptcy . . . is plenary and exclusive", so where, as here, a provision of the Bankruptcy Code is not obviously unconstitutional on its face, "the applicable standard, in measuring the propriety of" bankruptcy legislation "is that of rational justification."

*Kras*, 409 U.S. at 446–47 (first citing *Kalb v. Feuerstein*, 308 U.S. 433, 438–39 (1940); then citing *Flemming*, 363 U.S. at 611–12; then citing *Dandridge v. Williams*, 397 U.S. 471, 484–85 (1970); and then citing *Richardson v. Belcher*, 404 U.S. 78, 81 (1971)).

Sections 1307(c)(11) & 1325(a)(8) were both added to the Bankruptcy Code when the 109th Congress passed, and President George W. Bush signed into law, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, §213(7)(C) & (10), 119 Stat. 23, 53. The 2005 Act was a huge legislative undertaking, but a significant focus of the law was facilitating the collection of child-support payments and other domestic support obligations. See H.R. Rep. No. 109-31, at 59–62 (2005). Among other things, the 2005 Act increased the priority of domestic support obligations, like child support, to first (from seventh) in the ranked scheme codified in 11 U.S.C. §507(a), while also denying bankruptcy relief to or otherwise imposing adverse consequences on a chapter 13 debtor for failing to pay a post-petition domestic support obligation, as discussed above and otherwise. See, e.g., §212, 119 Stat. at 51–52.[7]

And there is certainly a rational justification for denying legislatively created benefits like a bankruptcy discharge to individuals who have been ordered, but have failed, to provide support for their minor children: "the 2005 amendments . . . display a

---

7. The 2005 Act's related changes included a new condition on a debtor's entitlement to a chapter 13 discharge, requiring the debtor to be current on post-petition domestic support obligations, not only through confirmation of the plan as required by §1325(a)(8), but through the completion of all other payments under the plan, §1328(a) (providing that, "in the case of a debtor who is required by a judicial . . . order . . . to pay a domestic support obligation," before the court may "grant the debtor a discharge", the debtor must "certif[y] that all amounts payable under such order . . . that are due on or before the date of the certification . . . have been paid"); §213(11), 119 Stat. at 53–54, and a new duty of chapter 13 trustees to give certain notices to specified parties in cases with claims for domestic support obligations, especially with respect to child support, 11 U.S.C. §1302(b)(6) & (d) (requiring that, "if with respect to the debtor there is a claim for a domestic support obligation," the chapter 13 trustee must provide certain "written notice[s] to the holder of the claim"—including notice "of the right of such holder to use the services of the State child support enforcement agency established under sections 464 and 466 of the Social Security Act for the State in which such holder resides, for assistance in collecting child support during and after the case"—and "to such State child support enforcement agency of such claim"); §219(d), 119 Stat. at 58.

special solicitude for children entitled to support payments from a noncustodial parent" and more broadly "evince[] a desire to protect intended recipients of domestic support payments." *In re Brooks*, 784 F.3d 380, 386 (7th Cir. 2015). "Congress's evident concern for the welfare of child support recipients" is undoubtedly a rational justification for the Code provisions that Nathan now challenges. *Id.* Notably, the 2005 Act was not Congress's first pass at favoring the payment of child-support obligations by debtors in bankruptcy. See, e.g., 8 *Collier on Bankruptcy* ¶1300.36[8] (LexisNexis) (discussing the Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, 108 Stat. 4106, which amended "[v]arious sections of the Code . . . to afford . . . protections to creditors holding claims for . . . child support"). And this persistent effort bolsters the conclusion that Congress's relevant enactments are rationally justified. At any rate, nothing in the record comes close to suggesting anything other than that §1307(c)(11) and §1325(a)(8) fall well within Congress's expansive constitutional power to enact bankruptcy laws.

III

This court last held a hearing in this case on February 4, 2025. At that hearing Nathan suggested that he is able to liquidate certain exempt assets (including but perhaps not limited to) brokerage or retirement accounts to cure his post-petition default in child-support payments and that, as much as he does not wish to do that, he would prefer that to dismissal of the case.

For these reasons, IT IS ORDERED that Nicole's motion to dismiss this case is granted to the following extent (and otherwise denied): the court will dismiss this case, by separate order, unless Nathan, by no later than **30 days after the date on which this order is entered**, (1) fully cures the post-petition default in child-support payments required by the final divorce judgment and (2) files proof that he has done so or that either the appropriate child-support agency or Nicole agrees that he has done so.

- If Nathan fully satisfies the above conditions, and the court does not dismiss this case, then the court will schedule a further hearing or other proceedings

on confirmation of the chapter 13 plan and any other pending matters that must be resolved before the court can address plan confirmation.

- If Nathan does <u>not</u> satisfy the above conditions, and the court dismisses this case, then the court will retain jurisdiction to adjudicate Nicole's request to bar Nathan from filing another bankruptcy case for 180 days and schedule further proceedings on that request if and as necessary and appropriate.

#####